UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
MARK BERMAN,

                              Plaintiff,

                                                          07 Civ. 1795 (RPP)
              - against -

SUGO LLC, ANDREW J. WEINSTEIN, and          **OPINION & ORDER**
ISIT LLC,

                              Defendants.
--------------------------------------------------------------------X
SUGO LLC and ANDREW J. WEINSTEIN,

                              Counter-Plaintiffs,

              - against -

ERIC LEVEN, ADITYA VERMA,
RIP ROAD LLC, and RIP ROAD, INC.,

                              Counter-Defendants.
--------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Counter-Defendants Eric Leven, Aditya Verma, Rip Road LLC, and Rip Road,

Inc., move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss each of the

claims asserted against them in the Answer to Amended Complaint with Counterclaims

and Third-Party Complaint dated September 25, 2007.  For the reasons that follow, the

motion to dismiss (Doc. No. 34) is granted in part and denied in part.

**BACKGROUND**

        Plaintiff Mark Berman filed an action in this Court against Defendants Sugo LLC,

Andrew Weinstein, and Isit LLC for breach of contract and fraudulent conveyance.[1]  In

---
[1] The Court takes judicial notice that at least two complaints relating to the same activity in this case have
been filed in other courts.  One action was filed by Weinstein and Sugo against Leven in New York State

their Answer to Amended Complaint with Counterclaims and Third-Party Complaint (the "Counterclaims"), Defendants Sugo LLC, Andrew Weinstein, and Isit LLC raised thirteen claims against Plaintiff Berman and Counter-Defendants Eric Leven, Aditya Verma, Rip Road LLC and Rip Road, Inc.  The Counterclaims assert breach of fiduciary duty, aiding and abetting breach of fiduciary duty, misappropriation of corporate assets, tortious interference with contractual relationships, tortious interference with prospective business relations, conversion, breach of contract, unfair competition, and unjust enrichment.  On October 30, 2007, Counter-Defendants moved to dismiss the Counterclaims.

I.     **The Parties**

Counter-Plaintiff Andrew J. Weinstein ("Weinstein") is a citizen of the State of New York, residing in New York, New York.  (Counterclaims ¶ 46.)  Counter-Plaintiff Sugo LLC ("Sugo") is a limited liability company formed pursuant to the laws of the State of Connecticut and registered to do business in New York.  (Id. ¶¶ 3, 47.)  Isit, LLC, is also a Connecticut limited liability company registered to do business in New York, whose organizational papers identify Weinstein as the manager of Isit.  (Id. ¶15.)  Counter-Defendant Eric M. Leven ("Leven") is a citizen of the State of New York, residing in New York, New York.  (Id. ¶ 48.)  Plaintiff Mark Berman ("Plaintiff" or "Berman") is a citizen of the State of California, residing in San Francisco, California.  (Id. ¶ 49.)  Counter-Defendant Aditya Verma ("Verma") is a citizen of the State of New Jersey, residing in Hoboken, New Jersey.  (Id. ¶ 50.)  Counter-Defendant Rip Road, LLC, is a New York limited liability company formed by Leven and Plaintiff, and in which

Supreme Court and was subsequently dismissed and re-filed here.  Weinstein and Sugo also filed a related complaint against Rip Road, LLC, in Connecticut, Sugo LLC et al. v. Rip Road, LLC, No. HHD-CV-07-5008079-S.

Plaintiff, Leven, and Verma were members.  (Id. ¶ 51.)  Counter-Defendant Rip Road,

Inc., is a Delaware corporation with a principal place of business in New York and a

successor in interest to Rip Road, LLC.  (Id. ¶ 52.)  Leven, Verma, and Plaintiff are

officers and directors of Rip Road, Inc.  (Id.)  The Court has jurisdiction over this action

based on diversity of citizenship, 28 U.S.C. § 1332(a), and over the Counterclaims based

on the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

## II.     Factual Allegations in the Counterclaims

The following facts are drawn from the allegations in the Counter-Plaintiffs'

Counterclaims and assumed to be true for the purposes of this motion to dismiss.  Cruz v.

Beto, 405 U.S. 319, 322 (1972); Oteze Fowlkes v. Adamec, 432 F.3d 90, 95 (2d Cir.

2005).  Sugo was formed as a Connecticut limited liability company in March 2005 by

Weinstein and Leven, each of whom owned a 50% share in the company.  (Id. ¶ 47, 55.)

Although Weinstein has at all times been Sugo's named managing member, Leven

assumed the titles and responsibilities of chief executive officer and president of Sugo.

(Id. ¶ 56.)  Sugo was to be a mobile marketing company that marketed goods and services

to mobile telephone users via their cellular phones.  (Id. ¶ 57.)

At the solicitation of Leven (id. ¶ 58), Plaintiff Berman invested $100,000 in

Sugo, allegedly pursuant to a seed money agreement (id. ¶ 9).  Leven told Weinstein that

Plaintiff was providing money pursuant to such agreement, but Weinstein claims he

never saw a signed copy and none was ever produced.  (Id. ¶ 20.)  Upon receipt of the

seed money, Sugo entered into a commercial lease for premises located at 11 West 30th

Street, Suite 4R, New York, New York.  (Id. ¶ 12.)  Sugo also entered into a contract of

short duration with Cingular.  (Id. ¶ 12.)  Aditya Verma acted as a consultant to Sugo for a limited time.  (Id. ¶ 59.)

In September 2005, Sugo entered into a joint venture agreement with Latin World Entertainment ("LWE") to develop and distribute media for the Hispanic market and expected to make considerable profits.  (Id. ¶ 62.)  The Counterclaims allege that shortly thereafter, Leven decided to dilute Weinstein's interest in Sugo, based upon a purported need to give Plaintiff Berman equity in Sugo.  (Id. ¶ 63.)  It is further alleged that when Weinstein refused to dilute his interest if Leven did not dilute his own, Leven began plotting with Plaintiff Berman to misappropriate the business opportunities of Sugo, and in particular the opportunities afforded by the joint venture with LWE in regard to the Hispanic market, as well as Sugo's opportunities with Univision, Cingular, Cingular Hispanic, and AOL.  (Id. ¶ 64.)

After Weinstein refused to dilute his interest, Leven sought to dissolve Sugo, but Weinstein objected to dissolution.  (Id. ¶ 65.)  In October 2005, Leven abandoned his role and functions at Sugo and froze the cash assets of Sugo without the consent of Weinstein. (Id. ¶ 67.)  No settlement or separation agreement was reached between Weinstein and Leven.  (Id. ¶ 68.)  Also in October 2005, Plaintiff Berman became aware of the management disputes at Sugo.  (Id. ¶ 13.)

In September 2005, Leven and Plaintiff Berman formed Rip Road, LLC, and Rip Road, Inc. (collectively "Rip Road"), which purport to be in the same business as that in which Sugo operates.  (Id. ¶¶ 60, 68.)  Leven is the chief executive officer and president of Rip Road; Plaintiff Berman is the vice president of finance and strategy of Rip Road; and Verma joined Rip Road as the executive vice president/marketing of Rip Road.  (Id.

¶ 61.)  The Counterclaims allege that Leven and Plaintiff Berman misappropriated the business and business opportunities of Sugo through Rip Road.  (Id. ¶ 68.)  Neither Leven nor Plaintiff advised Weinstein or Sugo of the creation of Rip Road or that Rip Road sought to acquire and did acquire the business and business opportunities of Sugo. (Id. ¶ 72.)  It is alleged that as a result of Plaintiff and Counter-Defendants' actions, Sugo has been "unable to pursue any business activities or continue existing business" (id. ¶ 69) and "has been destroyed as a functioning business entity" (id. ¶ 75).

The Counterclaims further allege that Leven owed a fiduciary duty to Sugo and Weinstein (id. ¶ 73) and violated such fiduciary duty by the above-described actions (id. ¶114).  It is alleged that Verma, along with Plaintiff, aided and abetted Leven in the breach of his fiduciary duty to Sugo and Weinstein.  (Id. ¶¶ 73-74.)

In November 2005, Weinstein formed Isit LLC ("Isit"), a Connecticut limited liability company registered to do business in New York.  (Id. ¶ 15.)  After November 24, 2005, Weinstein negotiated with other members of Isit in an attempt to provide services to Sugo and relieve Sugo of some of its financial burdens, including the commercial lease.  (Id. ¶ 15.)  Weinstein also sought to generate revenue for Sugo by servicing existing and prospective customers of Sugo and by having Isit take over Sugo's lease obligation.  (Id. ¶ 15.)

The Counterclaims state that Sugo and Weinstein have suffered damages in an amount not yet ascertained but believed to be in excess of $10,000,000.00.  (Id. ¶ 76.) Counter-Plaintiffs assert that these damages are "greatly in excess of any sum that Sugo might otherwise have owed to Plaintiff."  (Id. ¶ 75.)

### III.    The "Operating Agreement"

Several of the claims asserted in the Counterclaims base the liability of Counter-Defendants, in particular Leven, on an alleged breach of an "Operating Agreement." (Counterclaims ¶¶ 93, 94, 96, 97, 100-02, 105-08, 110-112, 117-119.)  While the Counterclaims do not set forth all the terms of the "Operating Agreement,"[2] they characterize particular provisions of the Operating Agreement that were allegedly breached as follows:

> 94.    The Operating Agreement further provided that each member would pay to Sugo all revenue collected by the member which relates to Sugo's business.

> 100.    The Operating Agreement further provided that no member may withdraw without the prior consent of the majority of the members, excluding such member, and that the consent may be granted or withheld at the other members' sole discretion.  Moreover, the Operating Agreement provided that a member shall be deemed to have withdrawn from Sugo in violation of the Operating Agreement if such Member ceased devoting substantially all of his time and attention to the business of Sugo during normal business hours.

> 105.    The Operating Agreement further provided that while a person owned an interest in Sugo and for twelve (12) months thereafter that person may not in any manner contact, solicit, service, make a sale to or accept a sale from a customer of Sugo, interfere with, divert or take away any customer of Sugo, render assistance to any competitor of Sugo to interfere with, divert or take any customer of Sugo or take any action which would materially adversely affect the business or contractual relationship between Sugo and any person.

> 110.    The Operating Agreement contained an express prohibition against any member of Sugo making personal use of or disclosing confidential information or trade secrets of Sugo.

(Counterclaims ¶¶ 94, 100, 105, 110.)  The Counterclaims do not attach any documents purported to be the "Operating Agreement."

---

[2] The non-moving parties, Counter-Plaintiffs, concede that the capitalized term "Operating Agreement" is not defined anywhere in the Counterclaims.  (Mem. Law Opp'n at 5 n.2.)

**DISCUSSION**

I.     **The Pleading Standard**

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court's role is to determine whether the pleadings are legally sufficient.  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 48 (1957)).  The district court must generally accept the factual allegations of the pleadings as true and draw all reasonable inferences in favor of the non-moving party.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

The district court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986) (disregarding petitioners' allegation that they were denied a minimally adequate education because "no actual facts" were alleged in support of the assertion).  As the Supreme Court clarified in Twombly, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.  The pleading standard is one of plausibility:  the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," id. at 1974; if the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its]

complaint must be dismissed." Id.; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the Court [in Twombly] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

## II.     Documents That May Be Considered

In determining the adequacy of a claim under Rule 12(b)(6), the district court's consideration is generally "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); see also Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).  The court may also consider documents that the pleader either possessed or knew about and that are integral to the complaint.  Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).  Consideration of such documents is permissible because the pleading party has actual notice of the documents and relied upon them in bringing suit, even if they are not explicitly referenced.  Id.

In support of their motion to dismiss, Counter-Defendants submit a declaration by Stephen M. Kramarsky that attaches several exhibits, among them Exhibit B, a "Letter of Understanding" dated April 13, 2005 and signed by both Weinstein and Leven on April 22, 2005, and Exhibit E, an affidavit of Counter-Plaintiff Weinstein dated April 2, 2007, and filed with the court in Connecticut in Sugo LLC et al. v. Rip Road, LLC, No. HHD-CV-07-5008079-S (the "Weinstein Affidavit").  The Weinstein Affidavit itself contains several exhibits, including Exhibit B, an unsigned copy of the "Letter of Understanding,"

and Exhibit C, a document entitled "Operating Agreement" dated April 15, 2005 that bears no signatures and that Counter-Plaintiffs acknowledge is only a draft agreement deliberately left unsigned by Leven and Weinstein. (Mem. Law Opp'n at 2 n.1.)

Counter-Defendants submit the Letter of Understanding to show that Leven, as a member of Sugo, was authorized to engage in business activities similar to the business of Sugo (i.e., Rip Road) and to compete directly with Sugo. The Letter of Understanding states, "It is understood and agreed that each Member may engage in other business activities which may require a significant amount of the time and effort of such Member, and that such activities may be similar to the business of [Sugo]." (Kramarsky Decl., Ex. B at 2 (bate stamp MSK0025).) Counter-Defendants argue that under this provision, they are not liable for any of their activities relating to Rip Road. In opposition to the motion to dismiss, Counter-Plaintiffs argue that the Letter of Understanding was superseded by the Operating Agreement, orally agreed to, that prohibited the members of Sugo from engaging in such activities.

Although Counter-Plaintiffs maintain that the Letter of Understanding has been superseded by an oral agreement, the Letter of Understanding is properly within the Court's review because it is integral to the Counter-Plaintiffs' Counterclaims alleging breach of fiduciary duty, misappropriation, and other claims. The Letter of Understanding is the only signed document that "memorializes the working relationship" between Leven and Weinstein as members of Sugo and sets forth the ownership interest in Sugo for each member as "an equal percentage." (Kramarsky Decl., Ex. B at 1 (bate stamp MSK0024).) Counter-Plaintiffs' breach of fiduciary duty claim relies on both the

business relationship between Leven and Weinstein and their joint ownership of Sugo.[3] (See Counterclaims ¶¶ 55, 56.)

Additionally, in arguing that the parties intended to be bound by an oral Operating Agreement, Counter-Plaintiffs rely on the fact that the "Letter of Understanding specifically stated that it would 'serve as a precursor to a more formal Operating Agreement between the Members.'" (Mem. Law Opp'n at 2 n.1.) As Counter-Plaintiffs rely in part on the terms and effect of the Letter of Understanding to set forth their claims, the prerequisites for the Court's consideration of this document are satisfied. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough").

Importantly, the Court's consideration of the Letter of Understanding presents no danger of prejudice to Counter-Plaintiffs: Weinstein had actual notice of the document as he not only signed and executed it, but also attached it as an exhibit to his affidavit filed in the Connecticut action. The fact that Weinstein signed the Letter of Understanding and relied on it in another proceeding establishes the fairness of its consideration on this motion to dismiss. Where, as here, the pleader has notice of documents that are integral to its claims, the pleader may not avoid the Court's consideration of such documents simply because they contain material adverse to their claims. See Cortec Indus, Inc., 949 F.2d at 44 ("Plaintiffs' failure to include matters of which as pleaders they had notice and

---

[3] It should be noted that the corporate filings of Sugo list only Weinstein as a member and principal. (Kramarsky Decl., Ex. C.) The Letter of Understanding is the only document before the Court that sets forth the fact that Leven and Weinstein own an equal percentage of Sugo, as alleged in paragraph 55 of the Counterclaims.

which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

The unsigned Operating Agreement, Exhibit C to the Weinstein Affidavit, is also within the scope of the Court's review on this motion to dismiss because it is incorporated into the Counterclaims by reference or through Weinstein and Sugo's reliance in making their allegations.  See Rothman, 220 F.3d at 88.  The Counterclaims refer to, represent language from,[4] and rely on the terms of an "Operating Agreement" in alleging breach of contract claims.  Although Exhibit C is an unsigned document, which usually would not be considered, Counter-Plaintiffs had actual notice of the draft agreement and admit it was never signed.  (Mem. Law Opp'n at 2 n.1.)  Thus there is no danger of prejudice to them by this Court's consideration of the draft agreement on this motion to dismiss.

### III.   Motion to Dismiss the Individual Counterclaims

#### A.  Counterclaims 6, 7, 8 and 9 – Breach of the Operating Agreement

Counterclaims 6, 7, 8 and 9 allege that Leven breached the provisions of the Operating Agreement that required him to devote his full time and attention to the business of Sugo and to pay Sugo all revenues he collected in relation to Sugo's business (Counterclaim 6), and that prohibited him from withdrawing from Sugo without prior written consent of the majority of the members (Counterclaim 7), from competing with Sugo after he withdrew (Counterclaim 8), and from making personal use of or disclosing the confidential information and trade secrets of Sugo (Counterclaim 9).

---

[4] The terms upon which the Counterclaims rely appear in nearly identical language in the draft operating agreement.  (Compare Counterclaims ¶¶ 94, 100, 105, 110, with Kramarsky Decl., Ex. E., Ex. C, §§ 5.3, 8.3, 9.1.A, 9.2.)

Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998); see also Roberts v. Karimi, 251 F.3d 404, 407 (2d Cir. 2001) (stating that "a plaintiff in a breach of contract case must prove . . . that an enforceable contract existed"). Although it is not necessary for each element to be pleaded individually, a claim that fails "to allege facts sufficient to show that an enforceable contract existed" between the parties is subject to dismissal. Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537, 2003 WL 23018888, at *4, 4-5 (S.D.N.Y. Dec. 22, 2003) (dismissing a breach of contract claim where insufficient facts were alleged to show an oral agreement existed and letter of intent contemplated a final agreement in writing). Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract. See Posner v. Minnesota Mining & Mfg. Co., 713 F. Supp. 562, 563-64 (E.D.N.Y. May 19, 1989) (dismissing a breach of contract claim, even under the more lenient standard for pro se plaintiffs, where "[a]lthough the existence of a contract is alleged, plaintiffs fail to set forth any specific information as to when the agreement was made, the terms of the agreement upon which liability is predicated, or any other evidence supporting the formation of an agreement"); see also Window Headquarters, Inc. v. MAI Basic Four, Inc., Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (denying a breach of contract claim where plaintiff failed to plead the existence of a contract between the parties, alleged only that the lenders "agreed to advance funds," and failed to plead the terms of the contract).

Counterclaims six through nine fail to allege facts sufficient to show that an Operating Agreement existed between Weinstein and Leven. Beginning in paragraph 93 and in several paragraphs thereafter, the Counterclaims employ the term "Operating Agreement" and characterize select provisions contained therein that were allegedly violated by Leven. But the Counterclaims do not set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or Leven's assent to its terms. Most strikingly, the Counterclaims fail to allege that the contract at issue was oral and that the parties intended to be bound by an oral agreement. Counter-Defendants are "'entitled to this information since in the absence thereof, [they] cannot know whether to plead affirmative defenses based on . . . [the] statute of frauds.'" <u>Window Headquarters, Inc.</u>, 1993 WL 312899, at *3 (alterations in original) (quoting <u>Marquardt-Glenn Corp. v. Lumelite Corp.</u>, 11 F.R.D. 175 (S.D.N.Y. 1951)). Where, as here, the pleadings are conclusory or frame legal conclusions as factual allegations, the Court is not bound to accept them. <u>See</u> <u>Papasan</u>, 478 U.S. at 286; <u>Posner</u>, 713 F. Supp. at 564. In the absence of any factual allegations supporting the existence of an enforceable agreement, Counterclaims six through nine fail to state a claim of breach of contract upon which relief may be granted.

Even if Counter-Plaintiffs were granted leave to replead, the four Counterclaims alleging breach of contract would not survive because the oral Operating Agreement between Leven and Weinstein is not an enforceable contract as a matter of law. Under New York law, even if they contemplated memorializing their agreement in writing, parties may enter into a contract orally. <u>See</u> <u>Ciaramella v. Reader's Digest Ass'n</u>, 131 F.3d 320, 322 (2d Cir. 1997); <u>Consarc Corp. v. Marine Midland Bank</u>, 996 F.2d 568, 574

(2d Cir. 1993); R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984). If, however, either party communicates an intent not to be bound until an agreement is fully executed, "no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985) (citing R.G. Group, Inc., 751 F.2d at 74 ("Under New York law, if the parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs.")).

In this case, the Letter of Understanding specifically contemplated a "more formal Operating Agreement" (Kramarsky Decl., Ex. B at 1); the draft Operating Agreement stated that "[t]his Agreement shall be effective when it is signed by all of the Members" (id., Ex. E, Ex. C at 2 (bate stamp MSK0054)); and Leven, by Counter-Plaintiffs admission, expressed an intent not to be bound by the terms of the Operating Agreement until he signed it, as he was working as a part-time consultant to Cingular. (Counter-Pls.' Mem. Law Opp'n at 2 n.1 ("The oral operating agreement was never signed solely because Leven requested that it remain only oral and did not wish to have a written operating agreement while he remained as a part time consultant to Cingular, a potential major Sugo customer.").) Under these circumstances, it can only be concluded that the parties intended not to be bound by the Operating Agreement until it was signed. Without the formation of a valid contract between Leven and Weinstein, Counter-Plaintiffs do not state claims for breach of contract.[5]

### B. Counterclaim 11 –Tortious Interference with a Contractual Relationship

---

[5] In view of the determination that no contract was formed between Leven and Weinstein containing the terms alleged in the Counterclaims, the Court need not address Counter-Defendants' argument that the alleged oral Operating Agreement is invalid under the Statute of Frauds.

Counterclaim 11 alleges that Plaintiff Berman, Verma and Rip Road tortiously interfered with the Operating Agreement between Leven and Counter-Plaintiffs. (Counterclaims ¶¶ 117-18.)  Under New York law, a claim of tortious interference with contractual relations "requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom."  Fusco v. Fusco, 829 N.Y.S.2d 138, 140 (App. Div. 2007) (internal quotations marks omitted).  Because, as explained above, Counter-Plaintiffs have failed adequately to allege the existence of a valid Operating Agreement, Counterclaim 11 is similarly inadequate to provide a basis for relief and is dismissed.

### C.  Counterclaims 1 and 10 – Breach of Fiduciary Duty and Aiding and Abetting

In Counterclaims 1 and 10, Counter-Plaintiffs allege that Leven owed a fiduciary duty to Weinstein and Sugo (Counterclaims ¶ 73), that he breached such duty by misappropriating Sugo's business opportunities and competing unfairly with Sugo (id. ¶ 114), and that Plaintiff Berman and Verma aided and abetted Leven in the breach of such duty (id. ¶¶ 73, 74).  To establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct.  Kurtzman v. Bergstol, 40 A.D.3d 588, 590 (N.Y. App. Div. 2007).  A fiduciary relationship exists under New York law "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of relation."  Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599

(2d Cir. 1991) (quoting <u>Mandelblatt v. Devon Stores, Inc.</u>, 132 A.D.2d 162, 168 (N.Y. App. Div. 1987).  Rather than determining the existence of a fiduciary relationship "by recourse to rigid formulas, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first."  <u>Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.</u>, 767 F. Supp. 1220, 1231 (S.D.N.Y. 1991), <u>rev'd on other grounds</u>, 967 F.2d 742 (2d Cir. 1992).

Counter-Defendants argue that the Counterclaims only summarily allege that Leven owed a fiduciary duty and nowhere allege the basis of such duty.  Read in the light most favorable to Counter-Plaintiffs, however, the Counterclaims can be read broadly to assert that Leven's fiduciary duty arose out of Weinstein and Leven's relationship as co-members and joint owners of Sugo.  Federal and state courts have recognized that members of a limited liability company, like partners in a partnership, owe a fiduciary duty of loyalty to fellow members.  <u>E.g.</u>, <u>Solutia Inc. v. FMC Corp.</u>, 456 F. Supp. 2d 429, 442 (S.D.N.Y. 2006) (stating that when parties enter a joint venture, they "'owe to one another, while the enterprise continues, the duty of the finest loyalty'" (quoting <u>Meinhard v. Salmon</u>, 164 N.E. 545, 546 (N.Y. 1928))); <u>Maillet v. FrontPoint Partners, L.L.C.</u>, No. 02 Civ. 7865, 2003 U.S. Dist. LEXIS 9832, at *7-8 (S.D.N.Y. 2003) (applying the "well settled [law] . . . that a partner in an organization owes a fiduciary duty of loyalty to fellow partners in that organization" to members of a limited liability company); <u>Salm v. Feldstein</u>, 20 A.D.3d 469, 470 (N.Y. App. Div. 2005) (stating that "[a]s the managing member of the company and as a comember with the plaintiff, the defendant owed the plaintiff a fiduciary duty to make full disclosure of all material facts" and that because of his fiduciary relationship, "the disclaimers contained in the contract, upon which the

defendant relies, did not relieve him of the obligation of full disclosure"); Willoughby Rehab. & Health Care Ctr., LLC v. Webster, No. 12431-04, slip op. at 4 (N.Y. Sup. Ct. Oct. 26, 2006) ("A partner, and by analogy, a member of a limited liability company, has a fiduciary obligation to others in the partnership or limited liability company which bars not only blatant self-dealing, but also requires avoidance of situations in which the fiduciary's personal interest might possibly conflict with the interests of those to whom the fiduciary owes a duty of loyalty.").

The Counterclaims allege that Leven and Weinstein together formed Sugo and each owned a 50% equity interest in Sugo. (Counterclaims ¶ 55.) They further allege that Leven assumed the titles and responsibilities of chief executive officer and president of Sugo. (Id. ¶ 56.) Having plead these allegations, Counter-Plaintiffs may be able to establish at trial that Weinstein placed trust and confidence in Leven as a co-member and managing member of Sugo, that Leven violated this trust or acted in bad faith by abandoning Sugo and diverting its resources to Rip Road, and that such violation caused damages to Weinstein and Sugo. Whether Weinstein continued to repose trust and confidence in Leven after Leven sought to withdraw as a member and sought to dissolve Sugo is an issue of fact for the jury. At this stage, the Court assumes as true Counter-Plaintiffs' allegations that Leven formed Rip Road in September 2005 (Counterclaims ¶ 60), abandoned his role at Sugo in October 2005 (id. ¶ 67), and owed a fiduciary duty to Sugo and Weinstein at all relevant times (id. ¶ 73). Accordingly, the motion to dismiss is denied as to the breach of fiduciary duty claim.

Counter-Defendants argue that Leven's activities were authorized by the Letter of Understanding and thus did not constitute a breach of fiduciary duty. This determination

involves an interpretation of the Letter of Understanding, specifically the provision that allows each member of Sugo to engage in other business activities that "may be similar to the business of [Sugo]," which will not be undertaken on a motion to dismiss.

With respect to the claim against Berman and Verma for aiding and abetting Leven's breach of fiduciary duty, Counter-Plaintiffs have adequately stated a claim against Berman but not against Verma. Where it has been established that an employee breached his fiduciary duty by making improper use of the employer's time, facilities or proprietary secrets to create a competing business, "third parties who have knowingly participated in the breach may be held accountable." Schneider Leasing Plus, Inc. v. Stallone, 172 A.D.2d 739, 741 (N.Y. App. Div. 1991). The Counterclaims allege either directly or inferentially that Plaintiff Berman knowingly participated in the alleged breach. They allege that Berman "plotted and conspired" with Leven to misappropriate the business opportunities of Sugo (Counterclaims ¶ 64) and that "Leven pursued his plan with Plaintiff and formed Rip Road and proceeded with Plaintiff to misappropriate Sugo's business and business opportunities through Rip Road" (id. ¶68). Together these allegations are sufficient to state a claim of aiding and abetting against Berman.

With respect to Verma, however, nothing is alleged beyond the conclusory assertion that Verma joined Rip Road and aided and abetted Leven, Plaintiff, and Rip Road in misappropriating the business of Sugo. (Id. ¶ 74.) Such bare allegations are inadequate to state a claim. See Twombly, 127 S. Ct. at 1964-65.

### D. Counterclaim 2 – Misappropriation

Counterclaim 2 alleges that Counter-Defendants and Plaintiff "misappropriated the assets, and in particular the business opportunities of Sugo to the detriment of Sugo

and Weinstein." (Counterclaims ¶ 78.) The paragraphs incorporated by reference in the first Counterclaim specifically allege that "Sugo entered into a joint venture agreement with [LWE]" that was "expected to be lucrative for Sugo" (id. ¶ 62), and that Leven and Berman, through Rip Road, misappropriated Sugo's business opportunities afforded by the joint venture with LWE, as well as Sugo's opportunities with Univision, Cingular, Cingular Hispanic, and AOL (id. ¶¶ 64, 68).

Counterclaim 2 is sufficient to state a claim of misappropriation. Under the doctrine of corporate opportunity in New York, "corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation." Alexander & Alexander of N.Y. v. Fritzen, 147 A.D.2d 241, 246 (N.Y. App. Div. 1989). A business opportunity is deemed an asset if the "corporation has a 'tangible expectancy' which means 'something much less tenable than ownership, but, on the other hand, more certain than a desire or a hope.'" Am. Fed. Group, Ltd. v. Rothenberg, 136 F.3d 897, 906 (2d Cir. 1998). While "taking steps . . . in preparation for engaging in competition with that employer after leaving its employ may not [necessarily] involve any breach of fiduciary duty," an employee "clearly crosses the line by going further in preparatory steps by actively soliciting the customers of his current employer and diverting his current employer's business to himself." Id. The Counterclaims sufficiently allege that Leven was a fiduciary of Sugo, that Sugo had a "tangible expectancy" in the joint venture with LWE (but not with any other company), and that Leven diverted that opportunity toward Rip Road. The motion to dismiss is therefore denied with respect to the claim of misappropriation.

### E. Counterclaim 5 – Conversion

Counter-Plaintiffs bring a tort claim of conversion in Counterclaim 5, which alleges, "Plaintiff and Counterclaim Defendants have converted the assets, business and good will of Sugo to themselves at the expense of Sugo and Weinstein." (Counterclaims ¶ 90.) Beyond this allegation, Counterclaim 5 does no more than incorporate the preceding paragraphs.

To establish a claim of conversion, a plaintiff "must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff's rights."[6] Fiorenti v. Central Emergency Physicians, PLLC, 305 A.D.2d 453, 454-55 (N.Y. App. Div. 2003). Thus, unlike misappropriation of corporate assets which requires only a showing of "tangible expectancy" and diversion, conversion requires a showing of plaintiff's ownership or legal right to possession of specific, identifiable property at the time of the alleged conversion and a showing that the defendant wrongfully took possession of the property thereby depriving the plaintiff of its right to possession. See 18 Am. Jur. 2d Conversion § 2 (2008).

Counterclaim 5 fails to state a claim of conversion that provides a basis for relief and fair notice to Defendants of the grounds upon which the claim rests. First, to the extent Counter-Plaintiffs allege conversion of good will or any intangible assets, the claim must be dismissed because a cause of action for conversion of intangible property is not actionable under New York law. Sporn v. MCA Records, 448 N.E.2d 1324, 1327

---

[6] In their memorandum of law in support of the motion to dismiss, Counter-Defendants state that under New York law, a claim of conversion requires a showing that the rightful owner made a demand for the return of the property. (Mem. Law Supp. Mot. Dismiss at 16-17.) A showing of demand for return is necessary only in cases where the defendant initially acquired the property lawfully. See Mauro v. Andrews, 200 A.D.2d 392, 393 (N.Y. App. Div. 1994); see also 18 Am. Jur. 2d Conversion § 2.

(N.Y. 1983); <u>MBF Clearing Corp. v. Shine</u>, 212 A.D.2d 478, 479 (N.Y. App. Div. 1995) (dismissing plaintiff's claim that defendant converted its "time, assets, associations, employees' services and equipment" on the grounds that conversion of intangible property is not actionable).[7] Second, Counterclaim 5 must be dismissed because it nowhere identifies the property that was allegedly converted.[8] <u>See</u> <u>Volt Delta Resources LLC v. Soleo Comm's Inc.</u>, No. 601443/05, 2006 WL 800791, at *3 (N.Y. Sup. Ct. Mar. 29, 2006) ("The plaintiff must allege that the defendant converted a specific, identifiable piece of property in order to sustain the cause of action."). Lastly, Counterclaim 5 fails to allege Counter-Plaintiffs' ownership of the allegedly converted property and Counter-Defendants' exercise of control or ownership over such property to the exclusion of the owners' rights. It is not enough to support a claim of conversion merely to incorporate the factual allegations relating to breach of contract and fiduciary duty. <u>Volt Delta Resources LLC</u>, 2006 WL 800791, at *3 (stating that "a claim of conversion cannot be merely a restatement of a breach of contract claim, but rather must allege independent facts sufficient to give rise to tort liability"); <u>accord</u> <u>Fesseha v. TD Waterhouse Investor Servs., Inc.</u>, 305 A.D.2d 268, 269 (N.Y. App. Div. 2003). Accordingly, Counterclaim 5 is dismissed for failure to state a claim.

---

[7] In their memorandum of law in opposition to the motion to dismiss, Counter-Plaintiffs "acknowledge that the reference to 'good will' in paragraph 90 of the Answer was mistaken as goodwill is intangible property." (Mem. Law. Opp'n at 9 n.4.) In defense of their conversion claim, they assert that intangible property that merges with tangible property is properly the subject of a conversion claim under New York law, citing <u>Thyroff v. Nationwide Mutual Ins. Co.</u>, 864 N.E.2d 1272 (2007). They argue that because the Counterclaims allege that "assets and business" were taken, "[m]ovants thus were given notice that tangible property and intangible property merged with tangible property were converted." (Mem. Law Opp'n at 9.) This untimely argument fails. The factual allegations in Counterclaim 5 do not adequately indicate that the "assets and business" were tangible property.

[8] In their memorandum of law in opposition to Counter-Defendants' motion, Counter-Plaintiffs more specifically state that "presentation materials to prospective business partners and other proprietary information created by Sugo in written and electronic form was [sic], upon information and belief, taken by Leven (and others) and used to solicit clients for [Rip Road]." (Mem. Law Opp'n at 9.) Allegations in a memorandum of law, however, cannot save a claim on a motion to dismiss.

### F. Counterclaim 3 – Tortious interference with contractual relationship

Counterclaim 3 alleges that Leven, Rip Road, Verma, and Berman tortiously interfered with Sugo's alleged contractual relationship with Latin World Entertainment Agency, Inc. (Counterclaims ¶ 81.) Specifically, it states that "Plaintiff and Counterclaim Defendants knew of the existence of a contractual joint venture between Sugo and LWE"; that they "intended to and did tortiously interfere with such contractual relationship"; and that "[a]s a result of Plaintiff's and Counterclaim Defendants' actions, Sugo lost the contract with LWE and lost the economic advantages it would have derived from its relationship with LWE." (Counterclaims ¶¶ 81-82.)

The elements of a claim of tortious interference with contract are "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1376 (N.Y. 1996). Counterclaim 3 fails to state factual allegations that adequately raise a right to relief on this claim. It simply alleges that a contractual relationship existed between Sugo and LWE, but sets forth no facts to allege what kind of contract Sugo had with LWE, whether it was nonexclusive, and whether it was valid. Importantly, Counterclaim 4 fails to allege a breach of contract by LWE; it only states that "Sugo lost the contract with LWE." As it is based on vague and conclusory allegations, Counterclaim 4 is dismissed.

### G. Counterclaim 4 – Intentional interference with prospective business relations

Counterclaim 4 alleges that "Sugo had several potentially lucrative business relationships" as a result of Sugo's efforts and resources; that Plaintiff and Counter-Defendants "deliberately interfered with such advantageous relationship[s] with the purpose and intent of depriving Sugo of [them] and bringing [them] to Rip Road"; and that Plaintiff and Counter-Defendants by "improper, deceptive, illegal or fraudulent conduct induced entities with which Sugo had a business relationship or prospective business relationship to terminate that relationship and, in some instances, transfer the relationship to Rip Road."  (Counterclaims ¶¶ 85-87.)

To state a claim of tortious interference with prospective business relations under New York law, a plaintiff must establish the following elements:  "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship."  Scutti Enters., LLC. v. Park Place Entm't Corp., 322 F.3d 211, 215 (2d Cir. 2003).  Counterclaim 4 simply recites the elements of a claim for tortious interference with prospective business relations without alleging facts to support this claim.  Importantly, it fails to identify the business relationships and third parties to those relationships on which the claim is based. It fails to set forth any facts regarding the "improper, deceptive, illegal or fraudulent conduct" in which Plaintiff and Counter-Defendants engaged.  Such conclusory allegations are insufficient to state a claim.  See Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc., 836 N.Y.S.2d 807, 812 (N.Y. Sup. Ct. 2007) (holding that plaintiff's allegations that defendant engaged in coercive business practices "without justification, entirely out of malice" and without "normal economic self-interest" were conclusory and

thus insufficient to state a claim). To survive a motion to dismiss, a pleading must do more than assert a "formulaic recitation of the elements of a cause of action" or set forth "labels and conclusions." Twombly, 127 S. Ct. at 1965. As Counterclaim 4 does no more than this, the motion to dismiss is granted with respect to this claim.

### H. Counterclaim 12 – Unfair competition

Counterclaim 12 asserts that the "foregoing described actions of Plaintiff and Counterclaim Defendants are acts of unfair competition and Plaintiff and Counterclaim Defendants have profited from the business, labor, skill, efforts and product development of Weinstein and Sugo to the detriment of Weinstein and Sugo." (Counterclaims ¶ 122.)

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another." Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) (citations omitted). Unfair competition is a "broad and flexible doctrine" that encompasses an "incalculable variety of illegal practices." Roy Export Co. Establishment v. Columbia Broad. Sys. Inc., 672 F.2d 1095, 1105 (2d Cir. 1982) (citations and quotation marks omitted). Courts have described unfair competition as "'misappropriat[ing] for the commercial advantage of one person ... a benefit or 'property' right belonging to another.'" Roy Export Co. Establishment, 672 F.2d at 1105 (quoting Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 101 N.Y.S.2d 483, 492 (N.Y. Sup. Ct. 1950)); see also Laser Diode Array, Inc. v. Paradigm Lasers, Inc., 964 F. Supp. 90, 95 (W.D.N.Y. 1997) ("Misappropriation of another's commercial advantage [is] a cornerstone of the tort."). Importantly, a claim of unfair competition must involve "some element of bad faith." Saratoga Vichy Spring Co., 625 F.2d at 1044.

Although claims of unfair competition often allege misappropriation of trade secrets or ideas, a claim may be based on misappropriation of information not rising to that level, such as client lists, internal company documents, and business strategies. Linkco, Inc. v. Fujitsu, Ltd., 230 F. Supp. 2d 492, 501-02 (S.D.N.Y. 2002) (collecting cases). In Demetriades v. Kaufman, 698 F. Supp. 521 (S.D.N.Y.1988), for example, an unfair competition claim survived a motion to dismiss where the plaintiff alleged that a residential developer misappropriated his architectural plans for the interior of a home and copied the home for another person for profit. Id. at 523. The plaintiff alleged that to obtain the plans, the defendant developer had trespassed on the property where the original home was located. Id. at 525. In Robotic Vision Systems, Inc. v. General Scanning, Inc., No. 96-CV-3884, 1997 WL 1068696 (E.D.N.Y. Sept. 8, 1997), a plaintiff technology company survived a motion for summary judgment where it alleged that it invested labor, skill and money in researching and developing a bid strategy for merging with a target company; a competing technology company misappropriated that information by fraudulently inducing the CEO of the plaintiff company to divulge its plan for the merger; and that the defendant company then put the fruits of plaintiff's efforts to use for its own benefit. Id. at *5.

In this case, Counter-Plaintiffs fail to set forth adequate factual allegations to support a claim of unfair competition. Although the Counterclaims allege that "Sugo . . . expended significant time, effort and funds to develop" several potentially lucrative business relationships (Counterclaims ¶ 85), they fail adequately to allege the bad faith acts by which Counter-Defendants misappropriated such labor or resources for their own commercial advantage. As the allegations set forth in Counterclaim 12 and the

incorporated paragraphs are conclusory and inadequate to support a claim of unfair competition, the claim is dismissed.

### I. Counterclaim 13 – Unjust enrichment

Counterclaim 13 alleges that Counter-Defendants and Plaintiff were unjustly enriched as a result of their actions and their failure to compensate Sugo and Weinstein for their business, labor, skill, efforts and product developments. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted). Essentially, the plaintiff must assert that it bestowed a benefit on the defendant and was not adequately compensated for that benefit. Korff v. Corbett, 18 A.D.3d 248, 251 (N.Y. App. Div. 2005).

Unjust enrichment is a quasi-contractually remedy that the law provides where a contractual relationship has legally failed. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006); Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003); Goldman v. Metropolitan Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005). When a valid, enforceable contract covers the relationship between the parties, New York law does not permit recovery pursuant to unjust enrichment or quantum meruit theories. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citing Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 516 N.E.2d 190, 193 (N.Y. 1987)); Bellino Schwartz Padob Adver., Inc. v. Solaris Mktg. Group, Inc., 222 A.D.2d 313, 313 (N.Y. App. Div. 1995) (stating that a plaintiff may not recover in quasi-contract from

parties to an express contract that "governs . . . the subject matter of the plaintiff's claim"); see also Vitale v. Steinberg, 307 A.D.2d 107, 111 (N.Y. App. Div. 2003) (dismissing an unjust enrichment claim against the officers and directors of the plaintiff's former employer because the existence of "an express contract governing the subject matter of plaintiff's claims ... bars the unjust enrichment cause of action as against the individual defendants").

Counterclaim 13 must be dismissed because this restriction on unjust enrichment claims would bar recovery by Counter-Plaintiffs here. The Letter of Understanding is a valid and enforceable written contract, signed by both Leven and Weinstein, which details the rights and responsibilities of the members of Sugo. Its terms specifically cover the subjects of allocations, reimbursements, and duties, which are the subject of Counter-Plaintiffs' claims. (Kramarsky Decl., Ex. B at 2.) Because an express contract governs the issues of members' allocation of profits and losses and their engagement in business activities similar to those of Sugo, Counter-Plaintiffs are precluded from relief on their unjust enrichment claim. The claim is therefore dismissed.

**CONCLUSION**

For the reasons stated above, Counter-Defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss is denied with respect to Counter-Plaintiffs' claims of breach of fiduciary duty (Counterclaim 10), aiding and abetting breach of fiduciary duty by Plaintiff Berman (Counterclaim 1), and misappropriation of corporate assets (Counterclaim 2). The remaining Counterclaims are dismissed: aiding and abetting breach of fiduciary duty by Counter-Defendant Verma (Counterclaim 1);

tortious interference with contract (Counterclaim 3), tortious interference with

prospective business relationships (Counterclaim 4), conversion (Counterclaim 5), breach

of contract (Counterclaims 6, 7, 8 and 9), tortious interference with contractual

relationship (Counterclaim 11), unfair competition (Counterclaim 12), and unjust

enrichment (Counterclaim 13). The parties are to complete discovery by September 12,

2008, file a pretrial order by September 26, 2008, and proceed to trial on October 6,

2008, at 9:30 AM.

     IT IS SO ORDERED.

Dated: New York, New York
     June *12*, 2008

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

*Attorney for Plaintiff*
Attn: Ronald Paul Mysliwiec
The Law Offices of Ronald P. Mysliwiec
1740 Broadway, 22nd Floor
New York, NY 10019
(212) 245-2202
Fax: (212) 245-8683

*Attorney for Counter-Plaintiffs*
Attn: Bennett Haskell Last
Gilbride, Tusa, Last & Spellane LLC
708 Third Avenue, 26th Flr.
New York, NY 10017
516-773-3931
Fax: 212-661-6328

*Attorney for Counter-Defendants*
Attn: Stephen M. Kramarsky
Dewey, Pegno & Kramarsky, LLP

220 East 42nd Street, 33rd Flr.
New York, NY 10017
(212) 943-9000
Fax: (212) 943-4325